IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREG HEUERMANN,[1]

Plaintiff,

v.

G.M. ANDES, LTD,

Defendant.                                         No. 11-0629-DRH

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

## I. Introduction and Background

Now before the Court is defendant's motion for summary judgment (Doc. 41). Plaintiff opposes the motion (Doc. 44). Based on the record and the applicable law, the Court **GRANTS** the motion.

On May 4, 2012, plaintiff Greg Heuermann filed a two-count third amended complaint against his former employer, G.M. Andes, LTD (Doc. 34).[2] Count I is titled wrongful discharge, harassment and Count II is titled intentional infliction of emotional distress. The third amended complaint alleges that plaintiff was a pharmacy technician for G.M. Andes, LTD, from September 15, 2009 to January 12, 2010 when he was discharged. Plaintiff alleges that defendant favored younger

---

[1] The Court is unsure as to the correct spelling for plaintiff's last name. All of the complaints contain the spelling "Heuermann." However, in the motion for summary judgment and the response in the opposition to summary judgment both parties spell the last name as "Heuerman." The Court will utilize the spelling contained in the complaints.
[2] The Court notes that plaintiff's third amended complaint, like his previous complaints, does not cite to a single statute in support of his claims.

employees over him, that the female employees constantly harassed him and that he was retaliated against because he complained of the harassment.

Originally, plaintiff filed suit against Andes Healthmart on July 22, 2011 (Doc. 2) and filed a first amended complaint on December 5, 2011 (Doc. 19). On April 18, 2012, the Court denied defendant's motion to dismiss Count II of the first amended complaint (Doc. 28). Plaintiff, with leave of the Court, filed a second amended complaint on April 19, 2012 (Doc. 31) and a third amended complaint on May 4, 2012 (Doc. 34). On August 22, 2012, defendant filed its motion for summary judgment (Doc. 41). Plaintiff filed his opposition on September 24, 2012 (Doc. 44). As the motion for summary judgment is ripe, the Court turns to address the merits.

## II. Facts

Defendant G.M. Andes, LTD, is an Illinois corporation with its principal place of business in Effingham, Illinois. Defendant owns and operates a pharmacy under the name of Andes Healthmart. Garret M. Andes II is the sole shareholder of G.M. Andes, Ltd. Andes Healthmart is located in Effingham, Illinois. Plaintiff was employed as a pharmacy technician from August 9, 2009 to January 12, 2010.[3] Beth Andes, Garrett's wife, is a pharmacy technician and the bookkeeper at Andes Healthmart. Plaintiff's wife, Louann, worked at the pharmacy. Jami Sidwell is also a pharmacy technician at Andes Heathmart.

---

[3] There is a discrepancy as to the dates regarding plaintiff's employment. The third amended complaint states the employment dates as September 15, 2009 through January 12, 2010 (Doc. 34 , ps. 1-3); defendant's motion for summary judgment states the employment dates as August 15, 2010 through January 12, 2011 (Doc. 41, pg. 8) and plaintiff's brief in opposition states the employment dates as: August 9, 2009 through January 12, 2010 (Doc. 44, ps 1-3).

According to plaintiff, Ms. Sidwell began harassing plaintiff about a week after his initial training and that she would harass him every two to three days. Plaintiff contends that the harassment included the following incidents/statements: (1) "Greg, if you don't know what the hell you are looking for, get out of the way and let somebody else do it"; (2) "You really need to learn what the hell you are doing or you are not going to have a job here"; (3) that she told him that she was going to "stick a counting tray up his fucking ass"; and (4) that she said to him "If you move my counting tray again I am going to shove it up your ass." Further, Heuermann maintains that Sidwell took issue with him putting band aids in the trash. Specifically, that Sidwell made him put his band aids in his pocket when other employees were allowed to throw them in the trash. Plaintiff claims that he reported these incidents throughout his employment to Mr. Andes and that nothing happened to resolve these issues.

Mr. Andes testified that plaintiff had complaints every other week and that he tried to take the lemon, make lemonade and then he would think that the problem was solved and it would not be solved. Specifically, Mr. Andes testified that plaintiff complained of a "bar room atmosphere" in the work area and that he discussed this with the technicians to keep the noise level down. Mr. Andes further testified that plaintiff was not filling enough prescriptions.

On December 15, 2009, plaintiff told Mr. and Mrs. Andes that the pharmacy technicians were being hard on him and that Mrs. Andes said that it was going both ways and that plaintiff was agitating the technicians. In January

2010, plaintiff found an article about sexual harassment with several paragraphs highlighted in the break-room and showed the article to Mr. Andes. Three days later, Mr. Andes terminated plaintiff. Shortly thereafter, Mrs. Andes terminated plaintiff's wife.

### III. Summary Judgment

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

In assessing a summary judgment motion, the district court must construe all facts in the light most favorable to, and draw all legitimate inferences in favor of, the nonmovant. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011); *Spivey v. Adaptive Marketing, LLC*, 622 F.3d 816, 822 (7th Cir. 2010); *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). But once a movant challenges the factual support and legal soundness of the plaintiff's claim, the plaintiff acquires the burden of demonstrating that a genuine fact issue remains for trial. *Marcatante v. City of Chicago, Illinois*, 657 F.3d 433, 440 (7th Cir. 2011), (citing *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007)). *See also Reget*, 595 F.3d at 695.

A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyi v.*

*Beverlky Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In other words, to survive summary judgment, the plaintiff must produce admissible evidence on which a jury could find in his favor. *Maclin v. SBS Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

## IV. Analysis

**Count I: Wrongful Discharge, Harassment**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a). Title VII generally forbids two types of employment discrimination: discrete acts of discrimination, such as termination from employment, and acts that create a hostile work environment. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010).

To survive summary judgment on a hostile work environment claim, a plaintiff must establish that: (1) the work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on his gender; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Overly v. Keybank National Assoc.*, 662 F.3d 856, 862 (7th Cir. 2011); *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009).

Section 2000e-3 (a) of Title VII prohibits an employer from discriminating against an employee ... because that individual opposed any practice made

unlawful by Title VII or made [a] charge, testified, assisted, or participated in a Title VII proceeding." *Lapka v. Chertoff*, 517 F.3d 974, 985 (7th Cir. 2008) (internal quotations omitted).

To establish a claim of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 985-86 (internal quotations omitted). Materially adverse actions include: "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id*. at 986 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

Retaliation may be established using the direct or indirect method of proof. *Benders v. Bellows and Bellows*, 515 F.3d 757, 764 (7th Cir. 2008). Under the direct method, the plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two. *Id.; Overly v. KeyBank Nat. Ass'n,* 662 F.3d 856, 866 (7th Cir. 2011) ( quoting *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park,* 490 F.3d 558, 562 (7th Cir. 2007)). To prevail under the indirect method, the plaintiff must show that (1) he engaged in statutorily protected activity; (2) he performed his job according to the employer's expectations; (3) he

suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011).

In addition, when a plaintiff is a member of a "majority"- like here, a male plaintiff alleging gender discrimination-the Seventh Circuit has said he must set out "background circumstances" that show that the employer discriminates against the majority, or he must show there is something "fishy" going on. *Phelan v. City of Chicago,* 347 F.3d 679, 684 (7th Cir.2003) (quoting *Harding v. Gray,* 9 F.3d 150, 153 (D.C.Cir.1993)); *see also Gore v. Indian Univ.*, 416 F.3d 590, 592 (7th Cir. 2005); *Farr v. At. Francis Hosp. & Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009) ("In a reverse discrimination case such as this one, we have replaced the first element with a requirement that the plaintiff show "background circumstances" suggesting that the employer discriminates against the majority.") Once a prima facie case is established, the employer must provide a nondiscriminatory reason for the employment action; if it does, the plaintiff then must show that the reason is pretextual.

First, defendant argues that Heuermann was not terminated in retaliation for reporting age discrimination. In support of this, defendant cites to plaintiff's deposition where he states: "I thought age […] wasn't an issue. I thought we totally were dropping that." (Heuermann depo. p. 104 lines 12-14). Further, Heuermann testified that he did not "think that age would have a lot to do with it." (Heuermann Depo. p. 104, lines 20-21). In opposition to the motion, Heuermann

does not dispute, mention or contest that age did not play a role in his harassment and/or termination. Thus, the Court grants summary judgment in favor of defendant and against plaintiff based on the age discrimination allegations contained in Count I of the third amended complaint.

Next, plaintiff maintains that he was sexually harassed and discriminated against because he is a man and that he was retaliated against for reporting the harassment. Defendant argues that the alleged harassment was not based on his sex and that he was not terminated in retaliation for reporting discrimination. The Court agrees with defendant.

In so far as Count I contains a hostile work environment/harassment claim, plaintiff has offered no evidence to permit a reasonable jury to find this conduct was inflicted on him because of his gender. While plaintiff testified that he felt the conduct was because he was a man, there is nothing in the record to support his assertion and this assertion is not reasonably supported by the record. *See, e.g., Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011)("Even on summary judgment, district courts are not required to draw every requested inference; they must draw only reasonable ones that are supported by the record."); *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006)(explaining that "when the evidence provides for only speculation or guessing, summary judgment is appropriate"). Without more, plaintiff cannot establish a prima facie case of hostile work environment. Moreover, plaintiff failed to produce evidence that establishes "background circumstances" showing that defendant discriminates

against the majority or that something fishy was going on. Plaintiff failed to adduce any evidence that there are triable issues as to whether Sidwell's alleged "offensive" conduct was because of, or based on, plaintiff's gender. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997). In fact, the records reveals that Sidwell did not make gender based comments or gender based gestures and that Sidwell's conduct was wholly related to plaintiff's work. He simply presents nothing in this regard. This case lacks any persuasive connection between Sidwell's behavior and plaintiff's gender.

Although viewing the facts in a light most favorable to plaintiff suggests that Sidwell may not have liked him, and even that she may have been making his life more difficult at the pharmacy, those same facts do not support a reasonable inference that she did not like him because he is male. Again, "there are not bits and pieces of circumstantial evidence that 'point directly to a discriminatory reason for [Sidwell's] action.'" *Overly*, 662 F.3d at 865 (quoting *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008)).

As to his retaliation claim, the Court finds that this claim fails under both the direct and indirect method, because no reasonable jury could conclude that he engaged in a statutorily protected activity. To engage in a statutorily protected activity, plaintiff's complaints must indicate that the discrimination occurred because of his gender. *Tomanovich v. City of Indianapolis & Ind. Dep't of Transp.*, 457 F.3d 656, 663 (7th Cir. 2006). Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected

class or providing facts sufficient to create that inference is insufficient. *Id*. Plaintiff's complaint's regarding Sidwell's conduct and the "bar room atmosphere" complaints to Andes made no mention of gender discrimination. Accordingly, plaintiff did not engage in a statutorily protected activity.

Finally, even assuming that plaintiff engaged in a statutorily protected activity, Heuermann's retaliation claim also fails under the indirect method because he cannot prove that defendant's non-discriminatory reasons for his termination are pretextual. Mr. Andes testified that Heuermann was terminated as a result of work performance issues and because of allegations that Heuerman sexually harassed female staff members. Andes also testified that the female employees were threatening to leave because of Heuermann's conduct towards them. Upon consideration of both the specific facts and the totality of the circumstances of this case, the Court finds that the plaintiff utterly fails to establish or raise a genuine issue of fact as to either his hostile work environment/harassment claim or retaliation claim. Thus, the Court grants summary judgment in favor of defendant and against plaintiff based on gender harassment/discrimination and retaliation allegations contained in Count I of the third amended complaint.

**Count II: Intentional Infliction of Emotional Distress**

In order to establish intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant engaged in "extreme and outrageous" conduct toward the plaintiff; (2) the defendant intended or recklessly disregarded the

probability that the conduct would cause the plaintiff to suffer emotional distress; (3) the plaintiff endured "sever or extreme" emotional distress; and (4) the defendant's conduct actually and proximately caused the plaintiff's distress. *Ulm v. Memorial Medical Center*, 357 Ill.Dec. 953, 964 N.E.2d 632, 641 (Ill. App. 4th Dist. 2012) *(*citing *Hayes v. Illinois Power Co.*, 167 Ill.Dec. 290, 587 N.E.2d 559, 563 (Ill. App. 4th Dist. 1992)). Although this is a fact-intensive inquiry, whether the conduct is "extreme and outrageous" is an objective standard and a question of law for the court to decide. *Ulm*, 964 N.E.2d at 641-42 (citing *Thomas v. Fuerst*, 281 Ill.Dec. 215, 803 N.E.2d 619, 625 (Ill. App. 1st Dist. 2004)).

> Extreme and outrageous behavior does not include "mere insults, indignities, threats, annoyances, petty observations or trivialities." To give rise to liability, it is insufficient that the conduct complained of "has been characterized by 'malice.'" That is, the case must be such that the "recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous[!]'"

*Ulm*, 357 Ill.Dec. 953, 964 N.E.2d at 642 (internal citations to *Hayes*, 167 Ill.Dec. 290, 587 N.E.2d at 563, and *Reilly v. Wyeth*, 315 Ill.Dec. 428, 876 N.E.2d 740, 755 (Ill. 2007) omitted). The Seventh Circuit has noted that because of this "high threshold" for outrageous conduct, "this Court and other federal courts applying Illinois law have denied recovery to plaintiffs who alleged that their employers subjected them to a continuous series of intentionally discriminatory acts." *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 568 (7th Cir.1997) (citing *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993) (disallowing IIED claim by plaintiff whose allegations included that she was not allowed to supervise white subordinates, excluded from office activities, subjected to

wiretapping, and had her vehicle vandalized); *Briggs v. North Shore Sanitary Dist.*, 914 F.Supp. 245, 252 (N.D.Ill.1996) (finding insufficient allegations that the plaintiff's employer and fellow employees hung a pickaninny doll in her office, subjected her to racial slurs, excluded her from office social activities, placed her on probation and refused to train her properly)); *see also Chi v. Loyola Univ. Med. Ctr.*, 787 F.Supp.2d 797, 808 (N.D.Ill.2011) (holding that "unsettling" allegations of an "unfair and perhaps even abusive work environment" that included co-workers using racial slurs in plaintiff's presence could not support IIED claim); *Fernando v. RushPresbyterian–St. Luke's Med. Ctr.*, 882 F.Supp. 119, 123–24 (N.D.Ill.1995) (finding that "extreme verbal abuse" that included racial slurs and was "inappropriate and offensive" did not constitute extreme and outrageous conduct).

Whether the defendant enjoys a position of authority over the plaintiff is a relevant factor for consideration. *Public Finance Corp. v. Davis*, 4 Ill.Dec. 652, 360 N.E.2d 765, 767 (Ill. 1976).

> However, due to the sensitivities of the employment relationship, courts have required an employer's conduct to be "truly … egregious" before it may give rise to liability. *Lewis v. School District # 70*, 523 F.3d 730, 747 (7th Cir. 2008). This is because "[e]mployers often and necessarily take actions during the course of business that result in emotional distress." *Id.*; *see also Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 13 (Tex.Ct.App. 2000)("[E]mployers need to be able to supervise, review, criticize, demote, transfer, discipline and terminate employees. These circumstances are often stressful and unpleasant for an employee and at times may even be unwarranted. Nevertheless, an employer must have latitude to exercise these rights in a permissible way even though emotional distress results.").

*Ulm*, 357 Ill.Dec. 953, 964 N.E.2d at 642 (internal citations and notations within parentheticals omitted).

Here, as in Count I, plaintiff testified that he was subjected to continuing harassment by co-employee Sidwell; that he complained to Mr. Andes and that Mr. Andes thought that the problem would go away but it did not. Specifically, he testified that Sidwell harassed him two to three times a week by telling him that she was going to shove a tray up his ass; told him that if he touched her there would be serious consequences and that if he did not know what he was doing to get the hell out of the way. Further, Heuermann maintains that Sidwell took issue with him putting a band aid in the trash and that Sidwell made him put his band aids in his pocket when other employees were allowed to throw them in the trash. Taking these facts in the light most favorable to plaintiff, these incidents that plaintiff complains about are not so outrageous that they go beyond the bounds of decency in the workplace and do not form a pattern or level of abuse sufficient to prevail on his claim. The record is devoid of any conduct that rises to the sufficient level to succeed on his claim. In fact, the record reveals that that the incidents that Heuermann complains of were based upon personality conflicts with employee Sidwell and not based upon age or gender. The incidents are better characterized as unprofessional, uncooperative, rude, vulgar and inconsiderate. Plaintiff has failed to point out a genuine issue of material fact as to the extreme or outrageous conduct, so it is unnecessary to go into the other elements of

intentional infliction of emotional distress. The Court grants summary judgment on this claim contained in Count II of the third amended complaint.

## V. Conclusion

Accordingly, the Court **GRANTS** defendant's motion for summary judgment (Doc. 41). The Court enters judgment in favor of defendant G.M. Andes LTD and against plaintiff Greg Heuermann. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 28th day of February, 2013.

Digitally signed by David R. Herndon
Date: 2013.02.28 13:42:58 -06'00'

**Chief Judge**
**United States District Court**